Harold J. Crawford, J.
Defendants move to dismiss all four causes of action contained in plaintiffs’ complaint on the ground that each fails to state facts sufficient to constitute a cause of *621 action and on the ground that this court lacks jurisdiction over the subject matter of the action. The third and fourth causes of action (each for a declaratory judgment) are further challenged on the ground that they seek relief similar to that demanded in the first and second causes of action.
Plaintiffs are 20 shareholders of the defendant co-operative corporation and bring this action (a) individually, (b) as representatives of others similarly situated and (e) derivatively. The defendants are the corporation, which maintains two apartment buildings (“the nobcliff ”, containing 67 apartments and “ the osborne ” containing 68 apartments), and five of its directors.
Each cause of action complains of the same alleged wrong, i.e., the passage of a corporate resolution decreasing the monthly carrying charges (rent) for 66 apartments located in “ the osborne ” by approximately $2.50 per month each, on the average, thereby equalizing the carrying charges of the corporate defendant’s two buildings. In their individual and representative capacities, plaintiffs claim that by passage of such resolution the corporation, through its defendant directors, violated the separate agreements entered into by the corporation and each of the shareholders whose carrying charges were not decreased, that the corporation would not increase or decrease the carrying charges payable by its tenant shareholders except on a percentage basis applied to all such tenant shareholders. In their derivative capacity, plaintiffs claim that the defendant directors, in passing said resolution (a) violated their duty of trust and loyalty to the corporation, (b) wasted corporate assets, and (c) granted to themselves compensation (since each defendant director resides in “ the osborne ”) in violation of the provisions of the corporate charter prohibiting payment of any compensation to the corporate directors. Plaintiffs demand an accounting, an injunction, a declaratory judgment and damages.
No attempt has been made to describe the four causes of action separately since every one of these causes contains elements relating to plaintiffs in each of their capacities and, for reasons to be set forth immediately hereinafter, defendants ’ claim of lack of jurisdiction is, in the opinion of the court, dispositive of the entire complaint.
Defendants’ contention that the court lacks jurisdiction over the subject matter of this action stems from the fact that the defendant corporation was formed under the provisions of the National Housing Act. Defendants claim that pursuant to that act and the regulations promulgated thereunder (by virtue *622 of which the defendant corporation obtained its current mortgage which is insured by the Federal Housing Administration [hereinafter referred to as F. H. A.]), the defendant corporation is required to submit its schedule of carrying charges to the F. H. A. for approval. They state that the new schedule, prepared as the result of the resolution of which the plaintiffs complain, was so approved. Defendants argue that the courts of this State are powerless to interfere with such approved schedule. Section 213.29 of the F. H. A. Regulations provides as follows: “§ 213.29 Rents and charges. The mortgagor shall not permit occupancy except in accordance with the schedule of charges and under an Occupancy Agreement or lease approved by the Commissioner.” (Code of Fed. Reg., tit. 24, § 213.29.) In their memorandum, plaintiffs concede that the schedule was approved by the F. H. A. and they quote therein, with certain underlining, the letter of approval as follows:
“ The Budget submitted by you for the forthcoming year is herewith approved.
“ We note that the Budget sets forth carrying charges equalizing the charges for identical or similar units in the two buildings which comprise the project.
“We have received correspondence from occupants who object to the equalization of carrying charges. The correspondence sets forth quite clearly the reasons for the opposition to the Boards’ action. However, it appears that the objectors should address their opposition to the Board of Directors or adopt such other remedy as may be available to them as stockholders of a cooperative.
“In accordance with the foregoing, the referred-to decrease of carrying charges is herewith approved.”
The question of jurisdiction can only be resolved after a comparative study of Fieger v. Glen Oaks Village (309 N. Y. 527, hereinafter referred to as Fieger) and Knolls Cooperative Section No. 1 v. Hennessy (2 N Y 2d 514, hereinafter referred to as Knolls).
Fieger was an action brought by certain tenants of apartment buildings owned by the defendants therein. Plaintiffs claimed that defendants procured mortgage loans which were insured by the F. H. A. on the basis of false and inflated statements of cost of construction, with the result that the rentals proposed by defendants and approved by the F. H. A. were excessive. The Court of Appeals, in affirming a judgment dismissing the complaint, stated inter alia (pp. 533-534): “these allegedly excessive rentals were fixed by the Federal Housing Administrator or Commission (this, of course, has nothing to do with *623 the emergency rent control laws but is a different statutory setup). Such a determination of the F. H. A. authorities represents Federal governmental action by authorized Federal officers. As made clear by Wasservogel v. Meyerowitz (300 N. Y. 125), Matter of Schmoll, Inc. v. Federal Reserve Bank (286 N. Y. 503) and older cases, the State courts have no power whatever to revise such official acts performed by Federal officials under authority of acts of Congress. In the Wasservogel case {supra) this court said flatly that when Federal authorities and Federal officers acting within their authority have fixed rents, the State courts may not in any manner revise or review those determinations, directly or indirectly, and that all State court action is forbidden when it would amount to ‘ an assertion of control of the manner in which the Federal rent office performed the function assigned to it by Congress ’. We see no escape from that here. The Federal Housing Act, as above stated, authorized the Administrator, ‘ in his discretion ’ (see § 608, subd. [b], par. [1]), to regulate rents. So empowered, he adopted rule or regulation section 280.30 under which he established maximum rents for these and similar properties. The maximum rents so established by him are still in effect and there is no assertion that the rents charged by defendants to these tenants were in excess of those maxima. We will assume with plaintiffs that this maximum rent fixation was for the benefit of tenants. There is nothing in that concept, however, which changes the settled law that the State courts cannot revise such an act of the Federal Government but must take heed of it and abide by it until it is changed by procedures, if any, established for such change. 'Such is the clear import of Wasservogel and the cases it cites. ’ ’
Knolls was an appeal from an order of the Appellate Division, which affirmed Special Term’s denial of defendants’ motion for summary judgment. Knolls Cooperative Section No. 1, Inc., a co-operative corporation, brought an action against its promoters charging certain acts of misconduct. Defendants therein, citing Fieger, contended that F. H. A. approval of the corporation’s mortgage loan rendered the New York State Supreme Court powerless to invoke its equity jurisdiction. The Court of Appeals rejected this argument and reasoned, inter alia, as follows (pp. 529-531):
“ There was no cause of action recognized by any existing principle of law whereby Fieger could recover except that the rent which he had agreed to pay might have been less if the administrator had imposed a lower rent ceiling. No co-operative corporation was involved. No contention was presented that *624 corporate directors or promoters had enriched themselves by violating their obligations as trustees for stockholders. It did not appear that the tenants had been defrauded or overreached in any manner which State law recognized, with the consequence that the tenants were without remedy unless they might discover one in the newly enacted National Housing Act which nullified, as they contended, the consent of a tenant to pay more than the administrator approved. The rent reserved in the leases in Fieger was in accord with the amounts approved by FHA, and the only relief which could have been available on any theory would have been by retroactive downward revision ■of the administrator’s ruling in approving the rent schedule. We held in Fieger that such relief could not be obtained in the [State courts, whether or not it was available in the Federal courts.
“In determining whether the National Housing Act divests stockholder-tenants in co-operatives of legal or equitable rights against corporate directors which they would otherwise have, it is necessary for us to consider the scope of the Federal administrator’s function in order to ascertain whether it conflicts with the jurisdiction of the State courts which is being* invoked. We conclude that it does not conflict with the exercise of such jurisdiction, and that the New York Supreme Court retains power to adjudicate the issues tendered by these causes of action in the complaint. There is no Federal administrative forum :in which these equitable contentions could be adjudicated. A decision in favor of plaintiff in the interest of these stockholder-tenants in this action would not ‘ impair the security of the FHA mortgage, nor would it alter FHA rulings that have been made. Recovery in this action by the co-operative corporation against its original sponsors would, on the contrary, improve the mortgage collateral by improving the financial status of the mortgagor corporation without changing the FHA arrangements. It would not reduce the rents which the tenant-stockholders are obligated to pay under their leases, except, perhaps, by some distribution or credit to the tenant-owners as stockholders of the co-operative. This would not decrease the amount of any payments upon the mortgage loan or of any carrying charges of the co-operative, nor impair the liability of the tenant-owners under their leases to contribute whatever is necessary to meet these obligations. It would only mean that the private sponsors of the enterprise would be required to assist the tenant-stockholders in defraying these obligations by refunding to the plaintiff corporation some of its assets which they are charged with having misappropriated.
*625 “ The only action taken by FHA which could possibly conflict with a recovery by plaintiff in this action is the administrator’s approval of these apartment leases. The leases do not provide for payment of specific sums of money. They conform to the usual pattern of leases in co-operative apartment houses requiring the tenant-owners to contribute ratably the amount needed from year to year to defray the carrying charges, including mortgage amortization. In approving these leases, the administrator had before him the data submitted by these defendants-appellants concerning the cost of the building and the amount of the ground rent, but he took no formal action in respect of them. These statistics were merely part of the evidence before him when he approved the loan and the tenants’ leases. These leases would not be altered if plaintiff recovers in this action against the sponsors of this enterprise; the mortgage would not be reduced, and would remain payable at the same interest rate and according to the same schedule of installments; the tenants would continue to be responsible for the same obligations. The only difference would be that defendants would be required to account for alleged misappropriation or waste of plaintiff’s corporate assets, which would assist the stockholders in meeting these corporate obligations in proportion to whatever extent defendants are accountable as fiduciaries.”
The action at bar contains elements of both Knolls and Fieger. Like Knolls, it involves a co-operative corporation and alleges, inter alia, a breach of trust. On the other hand, like Fieger, the instant complaint seeks to have a State court pass upon a schedule of rents required to be approved by the F. H. A. Fieger cautions that a State court may not review the determinations of the F. H. A. “ directly or indirectly ” (emphasis supplied), and, although the Court of Appeals, in Knolls, decided that the National Housing Act did not divest the State court of all equitable jurisdiction, it was genuinely concerned with whether its determination in that case would affect the carrying charges and the terms of the various leases theretofore approved by the F. H. A. The court acknowledged expressly that its determination did not affect such charges and leases, but would merely require the defendants to account for assets alleged to have been misappropriated by them.
Plaintiffs herein demand (a) a judicial declaration that the resolution decreasing the carrying charges constituted, inter alia, a waste of corporate assets and an act of the directors amounting to misfeasance in office, (b) that the corporate defendant be compelled to “reinstate” the carrying charges which were payable prior to the alleged wrongful resolution, (c) that *626 the corporate defendant be “ permanently enjoined and restrained from increasing or decreasing the monthly apartment carrying charges * * * except on the same percentage basis equally applied to all monthly carrying charges ” and (4) that the defendant directors account for any loss to the corporation as the result of the resolution.
Were this court to grant relief to the plaintiffs, it would necessarily revise or, at least, declare improper, the schedule of carrying charges which has been approved by the F. H. A. while acting under the authority delegated to it by Congress, and interfere with whatever method was utilized by that Federal agency in performing its function, regardless of the theory upon which the right to such relief is claimed. The only allegation of fact in the complaint as to the adverse effect of the resolution upon the corporate defendant is, in full, as follows: ‘ ‘ forty-sixth : That the reduction of the said monthly carrying charges increased the anticipated deficit to Two Thousand Four Hundred and Fifty-Nine ($2,459.00) Dollars.” Presumably, the F. H. A. was aware of this natural result of a decrease in carrying charges. However, whether or not it was so aware, obviously it was its function to consider the effect of such decrease upon the financial responsibility of the corporation. The court cannot escape the conclusion that if it were to entertain this action, it would become a forum to review those acts of the corporate defendant of which Federal approval is both indispensable and, under Fieger, exclusive. It is powerless to assume such a role.
The court has not overlooked the portion of the letter of approval of the schedule of carrying charges (quoted herein), which relegates aggrieved shareholders to ‘1 such other remedy as may be available ’ ’, but is of the opinion that such statement by the F. H. A. does not, expressly or by implication, authorize a State court to grant the remedy sought herein. It is not even suggested that any action taken as the result of an affirmative decree of this court would not itself be subject to F. H. A. approval.
Accordingly, the motion to dismiss the complaint is granted on the ground that this court lacks jurisdiction. It is unnecessary to decide the other questions raised by defendants’ motion.